# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAMIL T. BROWN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-02085** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MS. HALDEMAN, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendants' motion to partially dismiss the second amended complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 33.)  Also pending before the Court is <u>pro se</u> Plaintiff Kamil T. Brown ("Plaintiff")'s motion seeking the appointment of counsel.  (Doc. No. 35.)  For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion to dismiss, and the Court will deny without prejudice Plaintiff's motion seeking the appointment of counsel.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff, a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Phoenix ("SCI Phoenix") in Collegeville, Pennsylvania.[1]   He commenced the above-

---

[1]  Although Plaintiff has not filed a notice of change concerning his address, the DOC's inmate locator suggests that he has transferred correctional institutions and

captioned action on December 13, 2021, by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at State Correctional Institution Rockview ("SCI Rockview") in Bellefonte, Pennsylvania. (Doc. No. 1.) Named as Defendants were five (5) individuals all of whom appeared to be employed by the DOC and to have worked at SCI Rockview during the period of time relevant to Plaintiff's claims: Major Haldeman ("Haldeman"); Unit Manager Pasquale ("Pasquale"); Lieutenant Vance ("Vance"); Sergeant Rook ("Rook"); and Corrections Officer Cummings ("Cummings"). (Id. at 1–3.) In addition to the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2), as well as his prisoner trust fund account statement (Doc. No. 3).

On December 22, 2021, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, deemed his complaint filed, and partially dismissed his complaint for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. Nos. 6, 7.) In particular, the Court dismissed without prejudice Plaintiff's Section 1983 claims against Defendants Haldeman, Pasquale, Vance, and Cummings, but permitted Plaintiff to proceed on his Eighth Amendment claim against Defendant Rook. (Id.)

---

is currently incarcerated at SCI Phoenix. The DOC's inmate locator can be accessed at the following address: https://inmatelocator.cor.pa.gov/#/.

Additionally, the Court afforded Plaintiff thirty (30) days in which to file an amended complaint.  (Id.)

Following an extension of time (Doc. Nos. 8, 9), Plaintiff filed his amended complaint on April 13, 2022 (Doc. No. 10).  Plaintiff again named Haldeman, Pasquale, Vance, and Rook as Defendants.  (Id. at 1–2.)  Plaintiff also named, for the first time Nurse Vogt ("Vogt") and Doctor Presly ("Presly") as Defendants.   (Id. at 2.)   Plaintiff did not name, however, Cummings as a defendant.  (Id. at 1–2.)

On May 9, 2022, the Court deemed the amended complaint filed and directed the Clerk of Court to serve a copy of the amended complaint on the named Defendants (Doc. No. 12).  In the interest of administrative judicial economy, the Court requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)

On June 7, 2022, Defendants Haldeman, Pasquale, Vance, Rook, and Vogt collectively filed their waiver of service.  (Doc. No. 14.)  And, on June 24, 2022, counsel entered their appearances on behalf of these Defendants.  (Doc. Nos. 15, 18.)  That same day, Defendants Haldeman, Pasquale, Vance, Rook, and Vogt filed a motion to partially dismiss the amended complaint and supporting brief. (Doc. No. 16, 17.)

On August 17, 2022, Plaintiff filed, inter alia, a brief in opposition to the

pending motion to dismiss (Doc. No. 22), as well as a motion seeking leave to amend his amended complaint and supporting brief (Doc. Nos. 24, 25). Defendants did not file a brief in opposition to Plaintiff's motion seeking leave to amend. Thus, on January 4, 2023, the Court granted Plaintiff's motion and directed him to file an all-inclusive second amended complaint within twenty-one (21) days. (Doc. No. 27.) In addition, the Court denied, as moot, Defendants Haldeman, Pasquale, Vance, Rook, and Vogt's motion to partially dismiss the amended complaint. (Id.)

Plaintiff filed his second amended complaint on January 27, 2023. (Doc. No. 29.) Plaintiff once again named Defendants Haldeman, Pasquale, Vance, Rook, Vogt, and Presly. (Doc. No. 29 at 1.) He also named for the first time, Sergeant Vogt. (Id.)

On February 10, 2023, counsel for Defendants Haldeman, Pasquale, Vance, Rook, and Vogt, entered their appearances on behalf of Sergeant Vogt. (Doc. Nos. 31, 32.) On that same date, these Defendants filed a motion to partially dismiss the second amended complaint and supporting brief. (Doc. Nos. 33, 34.) Thereafter, on May 16, 2023, Plaintiff filed a motion seeking the appointment of counsel. (Doc. No. 35.) As reflected by the Court's docket, Plaintiff did not file a brief in opposition to Defendants' pending motion to dismiss the second amended complaint. Thus, per the Court's Local Rules, he is

4

"deemed not to oppose" Defendants' motion.  See M.D. Pa. L.R. 7.6.[2]

**B.    Factual Background**

Plaintiff asserts the following allegations against Defendants Haldeman, Pasquale, Vance, Rook, Vogt, and Sergeant Vogt.  As required by the standard of review that is applicable to motions to dismiss filed pursuant to Rule 12(b)(6), and for purposes of the Court's disposition herein only, Plaintiff's allegations are accepted as true.  See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018)

Plaintiff suffers from a spinal cord injury as a result of "being shot in the back[.]"  (Doc. No. 29 at 1.)  Because of this injury, he has "bottom tier/bottom bunk status" and "he cannot move up/down the stairs or play sports[.]"  (Id.)  On February 5, 2020, Defendant Pasquale, who knew that Plaintiff could not move to "the top tier[,]" disregarded "all medical restrictions" and ordered Defendant Rook to move Plaintiff to "the top tier from C-BLOCK, A-SIDE Cell 148 lower tier to Cell 214 top tier[.]"  (Id.)  Defendants Pasquale and Rook "ignored" what Plaintiff had told them, concerning his "medical restrictions[.]"  (Id. (alleging that he showed Defendant Rook his "Bottom Tier Medical Pass for Lower

---

[2]  Although the waiver of service forms were mailed to all of the named Defendants, Defendant Presly has not returned his waiver and counsel has not entered an appearance on his behalf.  Thus, it appears that service has not been effectuated on Defendant Presly.  As a result, the Court will not address Plaintiff's allegations or claims against Defendant Presly at this time.  The Court will, however, provide Plaintiff with additional time to file any information that he may have concerning Defendant Presly so that service can be effectuated.

Bunk/Lower Tier Status" and that Defendant Rook stated he "don't care . . . your [sic] moving").)

The following day, on February 6, 2020, Plaintiff "personally spoke" with Defendant Pasquale about how she and Defendant Rook had moved him to the "[t]op [t]ier." (Id.) Plaintiff also discussed his medical status with Defendant Pasquale and showed her his "medical restrictions" concerning "Lower Bunk/Lower" tier status; Plaintiff was moved to the "top tier" anyway. (Id. at 2; id. at 1–2 (alleging that Defendant Pasquale stated, "your [sic] moving").) In addition, Plaintiff wrote a request slip to Defendant Haldeman about this "medical problem/condition." (Id. at 2.) Although Plaintiff does not specify the date on which he submitted this request slip, it appears that he may have done so between February 6th and February 8th of 2020. See (id.). Defendant Haldeman, who supervises the Unit Managers, did not respond to Plaintiff's request slip. (Id.)

On February 8, 2020, Plaintiff spoke with Defendant Vance and explained his medical condition and how Defendants Pasquale and Rook were moving Plaintiff to the "[t]op [t]ier[,]" even though he was having problems with his spinal cord injury. (Id.) Defendant Vance stated that he would check on it. (Id.)

The following day, on February 9, 2020, Plaintiff "spoke personally" with Defendant Haldeman, stating that he had written her a request slip, but that she

had not responded to it.  (Id.)  Defendant Haldeman allowed Plaintiff to explain

his medical condition and accompanying restrictions and how Defendants

Pasquale and Rook were intentionally refusing to follow the orders of medical

professionals, which direct that Plaintiff be on "Lower Bunk/Lower Tier

Status[.]"  (Id.)

Thereafter, on February 12, 2020, Plaintiff "fell down from the Top Tier

Staircase to the Bottom Tier suffering injury to [his] Spinal Cord, Tail Bone,

Right Hand/Right Knee-Cap[.]"  (Id.)  He was "placed in the Infirmary and told

the medical Nurses . . . that [he was] in pain, Spinal Cord, Tail Bone, Right

Hand/Right Knee-Cap[.]"  (Id.)  While he was in the infirmary, he requested

Defendants Vogt and Sergeant Vogt, who are husband and wife, to provide him

with the necessary paperwork to file a grievance against Defendants Pasquale

and Rook.  (Id. at 3.)  Defendants Vogt and Sergeant Vogt "denied [Plaintiff] all

paperwork[.]"  (Id.)  Plaintiff believes that Defendants Vogt and Sergeant Vogt

conspired against him to deny him grievances.  (Id.)

Subsequently, however, on February 21, 2020, Plaintiff filed grievance

number 852140 against Defendants for moving him to the "Top Tier, where he

fell down the steps[.]"  (Id. at 4.)  All of Plaintiff's grievance appeals, including

his appeal to final review, were denied.  (Id.)

In connection with all of these allegations, Plaintiff claims that Defendants

Haldeman, Pasquale, Vance, Rook, Vogt, and Sergeant Vogt, violated his rights under the Eighth Amendment to the United States Constitution. (Id.) Additionally, although not explicitly set forth by Plaintiff, the Court also treats the second amended complaint as asserting a First Amendment retaliation claim and a Fourteenth Amendment due process claim against Defendants Vogt and Sergeant Vogt based upon allegations concerning the prison grievance process. (Id. at 3.) Finally, Plaintiff claims that Defendants conspired to violate his constitutional rights. (Id. at 4.) As for relief, Plaintiff seeks discovery materials to litigate this lawsuit, as well as compensatory and punitive damages. (Id.)

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be

8

drawn from them." See Taksir, 903 F.3d at 96-97 (citation and internal quotations omitted). The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted). The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by Twombly and Iqbal. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016). First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" See id. (quoting Iqbal, 556 U.S. at 675) (alterations in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" See id. (quoting Iqbal, 556 U.S. at 679). And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" See id. (quoting Iqbal, 556 U.S. at 679).

## III.   DISCUSSION

As set forth above, the Court treats Plaintiff's second amended complaint as asserting violations of his First, Eighth, and Fourteenth Amendment rights pursuant to the provisions of Section 1983.  (Doc. No. 29 at 3, 4.)  The Court also treats Plaintiff's second amended complaint as asserting conspiracy claims to violate his constitutional rights pursuant to the provisions of Section 1983 and 42 U.S.C. § 1985 ("Section 1985").[3]  (Id. at 4.)

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead

---

[3] Defendants have only challenged Plaintiff's Section 1983 claims and not his Section 1985 claims.  Thus, the Court will focus its discussion on Plaintiff's Section 1983 claims.

provides a remedy for the violation of a federal constitutional or statutory right."
See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, Plaintiff
must allege that each defendant was personally involved in the act or acts that he
claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's
personal involvement by describing the defendant's participation in or actual
knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New
Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at
1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal
involvement requires particular 'allegations of personal direction or of actual
knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing
any Section 1983 claim against prison officials, a plaintiff may not rely solely on
respondeat superior, see id. (citation omitted), which is a theory of liability that
"arises 'solely on the basis of the existence of an employer-employee relationship,'
regardless of whether the employer had any part in causing harm[,]" see Santiago v.
Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of
Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

As discussed above, Defendants Haldeman, Pasquale, Vance, Rook, Vogt,
and Sergeant Vogt have filed a motion to partially dismiss the second amended

complaint.   (Doc. Nos. 33, 34.)   In support, they argue that, based upon the allegations as pled, the second amended complaint should proceed only on an Eighth Amendment claim against Defendants Pasquale and Rook.  (Id.)  Defendants further argue that Defendants Haldeman, Vance, Vogt, and Sergeant Vogt should be dismissed for lack of personal involvement.  (Id.)

The Court, having reviewed these arguments, as well as Plaintiff's allegations in the second amended complaint, will grant in part and deny in part Defendants' motion to dismiss.  For the sake of clarity, the Court addresses Defendants' separate arguments in turn below.

## A.    Defendants Haldeman and Vance

Defendants Haldeman and Vance assert that Plaintiff is attempting to hold them liable under the Eighth Amendment for failing to stop his move to top tier status on February 5, 2020, and for disregarding his complaints concerning his medical condition and accompanying restrictions.   See (Doc. No. 34 at 4). Defendants Haldeman and Vance further argue, however, that by Plaintiff's own admission, they did not become aware of the move to top tier status until days after it had already occurred and that, further, there are no allegations to suggest that they participated in the decision to move Plaintiff to top tier status.  (Id.)  As a result, they contend that they should be dismissed as defendants from this action.  (Id. at 4–5.) The Court, however, is unpersuaded.

12

In the second amended complaint, Plaintiff alleges that he was moved to top tier status on February 5, 2020 (Doc. No. 29 at 1) and that he fell from the top tier staircase on February 12, 2020 (id. at 2). Plaintiff alleges that he spoke with, and/or wrote to, Defendants Haldeman and Vance either during or shortly after the time period in which he was moved to top tier status, but before he had fallen from the top tier staircase. (Id.) And, finally, although not entirely clear, Plaintiff seems to suggest that Defendants Haldeman and Vance had supervisory responsibilities over Defendants Pasquale and Rook, the defendants who allegedly ordered and carried out Plaintiff's move to top tier status on February 5, 2020. See, e.g., (Id. at 1–2 (naming Defendant Vance as a "Lieutenant" and naming Defendant Haldeman as a "Major[,]" who "supervises the Unit Managers").)

At this early stage of the litigation, the Court finds that Plaintiff has plausibly alleged that (a) Defendants Haldeman and Vance were on notice of continued wrongdoing (i.e., that Plaintiff had been moved to "top tier" status when his medical condition and accompanying restrictions required him to be on "bottom tier" status) and that (b) Defendants Haldeman and Vance had an opportunity to correct that alleged wrongdoing, but failed to do so. As a result, the Court finds that these allegations are sufficient to show the personal involvement of Defendants Haldeman and Vance—that is, that they had actual knowledge of and acquiesced in the complained-of-events that form the basis of Plaintiff's Eighth Amendment claims.

See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court had failed to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).

Accordingly, the Court concludes that Plaintiff's second amended complaint has plausibly alleged the personal involvement of Defendants Haldeman and Vance in this Section 1983 action.  As a result, the Court will deny Defendants Haldeman and Vance's motion to dismiss on this basis, and Plaintiff will be permitted to proceed on his Eighth Amendment claims against these Defendants.

**B.      Defendants Vogt and Sergeant Vogt**

Defendants Vogt and Sergeant Vogt assert that Plaintiff is attempting to hold them liable under the "Eighth" Amendment for failing to provide him with medical care and for refusing to provide him with the paperwork necessary to file a grievance. (Doc. No. 34 at 5.)   Defendants Vogt and Sergeant Vogt argue, however, that Plaintiff alleges no facts concerning how they denied him medical care and that, although Plaintiff claims that they denied him grievance paperwork, Plaintiff's claim fails as a matter of law because there is no constitutionally protected right to the prison grievance process.  (Id.)  As a result, Defendants Vogt and Sergeant Vogt contend that they should be dismissed as defendants from this action.  (Id. at 5.)

For the reasons discussed below, the Court finds that Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Vogt and Sergeant Vogt should be dismissed for the reasons argued by Defendants in their pending motion and supporting brief.  However, the Court treats Plaintiff's second amended complaint as also asserting a First Amendment retaliation claim against Defendants Vogt and Sergeant Vogt.  Thus, because Defendants have not addressed this retaliation claim, Plaintiff will be permitted to proceed on this claim at this time.  That said, the Court turns to Plaintiff's Eighth and Fourteenth Amendment claims.

As an initial matter, the Court finds that there are no factual allegations in the second amended complaint which would establish how Defendants Vogt and

15

Sergeant Vogt were personally involved in a violation of Plaintiff's Eighth Amendment rights. See Dooley, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)); Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (explaining that, in order for a plaintiff to prevail on an Eighth Amendment claim under Section 1983, the plaintiff must make "a showing that each defendant was personally involved in the alleged wrongdoing").

In addition, to the extent that the second amended complaint asserts that Defendants Vogt and Sergeant Vogt violated Plaintiff's Fourteenth Amendment rights based upon their denial of grievance paperwork, the Court finds that this claim fails outright. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. XIV, § 1. "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components." Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted). The procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness

of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted).

In order to state either a procedural or substantive due process claim, Plaintiff must establish, as a threshold matter, that he has was deprived of an individual interest that is encompassed by the Fourteenth Amendment's protection of life, liberty, and property.  See McCurdy v. Dodd, 352 F.3d 820, 825-26 (3d Cir. 2003) (explaining that, in Section 1983 actions, courts must address the threshold issue of whether the alleged due process right implicates a constitutional right at all); Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the "deprivation of procedural due process rights, the plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law" (citation and internal quotation marks omitted)); Skiles v. City of Reading, 449 F. App'x 153, 157 (3d Cir. 2011) (unpublished) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the deprivation of substantive due process rights, the plaintiff must allege that (1) "he has a protected constitutional interest at issue" and (2) government employees engaged in conduct that "shocks the conscience[,]" which is a standard that seeks to protect an individual from "arbitrary action of government" (citation and internal

citations and internal quotation marks omitted)).

Here, to the extent that Plaintiff seeks to assert a protected liberty interest in the grievance procedures at SCI Rockview,  the Court agrees with Defendants Vogt and Sergeant Vogt that prisoners do not have a constitutional right to such grievance procedures.  See, e.g., Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished) (explaining that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983" (citation omitted)); Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (unpublished) (affirming the district court's conclusion that the "defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim[,]" and explaining that "[p]risoners do not have a constitutional right to prison grievance procedures" (citation omitted)); Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (unpublished) (explaining that prisoners do not "have a liberty interest protected by the [D]ue [P]rocess [C]lause in the grievance procedures" (citation omitted)).

Accordingly, the Court will grant Defendants Vogt and Sergeant Vogt's motion to dismiss to the extent that they seek dismissal of Plaintiff's Eighth and Fourteenth Amendment claims.  As noted above, however, the Court will allow Plaintiff to proceed on his First Amendment retaliation claim against Defendants Vogt and Sergeant Vogt.

**B.    Plaintiff's Motion Seeking the Appointment of Counsel**

The final issue before the Court is whether a request for appointed counsel for Plaintiff is warranted at this time.  In his motion seeking the appointment of counsel, Plaintiff asserts that: he is indigent; the issues in this case are complex; there will be conflicting testimony; he has limited knowledge of, and experience dealing with, the law; and he needs counsel to properly pursue and present his Section 1983 claims in this action.  (Doc. No. 35.)  In addition, Plaintiff asserts that he is incarcerated, and, thus, is unable to appropriately investigate the facts of his case.  (Id.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The United States Court of Appeals for the Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted).  Second, if the district court determines that the

plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress.  They are not exhaustive, nor are they each always essential").  Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157–58.

Having reviewed Plaintiff's motion, the Court concludes that the appointment of counsel is not warranted at this time.  Under the process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel. Even assuming arguendo that his case has such merit in fact and law, the Court finds that

Plaintiff has the apparent ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as demonstrated by the filing of his complaint, his amended complaint, his second amended complaint, his motion for leave to proceed in forma pauperis, and his motion seeking the appointment of counsel.  (Doc. Nos. 1, 2, 10, 29, 35.)  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147-48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding his incarceration, the Court notes that, if Plaintiff were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.  And, finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to partially dismiss the second amended complaint. (Doc. No. 33.)  In addition, the Court will deny, but without prejudice, Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 35.)  An appropriate Order follows.


Dated: August 23, 2023                          s/ Sylvia H. Rambo
                                                SYLVIA H. RAMBO
                                                United States District Judge