UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMIL T. BROWN, | |
| Plaintiff, | CIVIL ACTION NO. 1:21-cv-02085 |
| v. | (SAPORITO, J.) |
| MS. HALDEMAN, *et al.*, | |
| Defendants. | |

MEMORANDUM

Plaintiff Kamil T. Brown, formerly incarcerated at SCI-Rockview, proceeds on a complaint against seven defendants based on an incident in which he fell down a flight of stairs in the prison. All defendants have moved for summary judgment (Docs. 80, 84). For the foregoing reasons, the Court will grant summary judgment to defendants Dr. Vernon Preston, Nurse Melissa Vogt, Sgt. Vogt, Ms. Haldeman, and Lt. Vance, but deny summary judgment as to the Eighth Amendment claims against Unit Manager Pasquale and Sgt. Rook.

I. BACKGROUND

Brown proceeds on an amended complaint (Doc. 29) filed on January 27, 2023. In brief, he alleged that he has a disability that required him to be placed on the bottom tier of the prison, but the

defendants improperly moved him to a cell on a higher tier. He alleged that because of this cell placement, he fell down a flight of stairs on February 12, 2020, and then received inadequate medical care for his injuries, partly in retaliation for filing grievances about the issue. *See* (Doc. 29).

On August 23, 2023, the Court granted defendants' motion to dismiss the complaint in part, permitting Brown to proceed on First Amendment retaliation claims against Nurse Vogt and Sgt. Vogt; Eighth Amendment deliberate indifference claims against Haldeman, Pasquale, Vance, Rook, and Preston[1]; and Section 1985 conspiracy claims against all defendants. In response to the defendants' motions for summary judgment (Docs. 80, 84), Brown now concedes that Nurse Vogt, Sgt. Vogt, and Preston are entitled to summary judgment because he failed to exhaust administrative remedies against them, and that "the facts do not make out an actionable conspiracy claim" under Section 1985. *See* (Doc. 100 at 2). Thus, the only disputed issue is defendants' request for summary judgment on the Eighth Amendment claims against Haldeman, Pasquale, Vance, and Rook.

---

[1] Preston was named as "Presly" in the amended complaint.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to

the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III. MATERIAL FACTS

Construed in the light most favorable to Brown, the non-movant, the summary judgment record indicates as follows: Since 2006, Brown has suffered from permanent spinal cord damage and "bilateral drop foot," which leaves him unable to lift or arch his feet properly. He wears leg braces and walks with a "dragging or slapping gait." For several years in the custody of the Pennsylvania Department of Corrections, he was

treated extensively for this condition and given "bottom tier, bottom bunk" status to accommodate his mobility issues.

Brown was transferred to SCI-Rockview in 2019, and the record indicates inconsistency in how Brown's medical restrictions were recorded. On December 11, 2019, he was assigned to work in the kitchen in a job he was physically unfit to perform. The kitchen manager told Brown that "he could find nothing in the computer about [Brown's] medical restrictions." On the advice of his counselor, and defendant Pasquale, Brown visited the medical department "to get the matter straightened out." His medical records indicate that upon examination, the medical department renewed his work restrictions, and his "bottom tier, bottom bunk" status, effective December 13, 2019, through June 13, 2020. *See* (Doc. 100-2).

Nonetheless, on February 5, 2020, Defendant Rook, "with the knowledge and approval" of Pasquale, ordered Brown to move to a cell on the top tier of the housing unit. Brown protested, informed Rook of his mobility issues and need for leg braces, and "showed [Rook a] bottom tier medical pass for lower bunk/lower tier status." Rook allegedly responded: "I don't care . . . [y]ou're moving to the top tier." At some unspecified later

time, Rook "let on that he could not find any medical restrictions for [Brown] in his computer." On February 6, Brown also advised Pasquale of his complaints, and Pasquale responded: "If Sergeant Rook wants you to move upstairs, then you're moving to the top tier."

Brown attests that he made similar complaints to Heather Haldeman, the unit major, by filing inmate request slips directed to her on February 7 and February 10.[2] Brown received no responses. Brown also "encountered" Haldeman in person on February 9. Haldeman "did not discuss the [February 7] request slip" but "did permit [Brown] to explain" his concerns about the medical restrictions. Brown attests that he also submitted a request slip to defendant Vance, a unit lieutenant, but received no response. He also attests that he "encountered" Vance in the inmate dining room on February 8, and that Vance "stated that he would look into the matter."

On February 11, Brown had a medical appointment for what he describes as an "audit" of his medical records. The record of that visit

---

[2] In a declaration, Brown attests that "any and all medical housing assignment restrictions were provided to Defendant Haldeman via in-house email," but this statement is disregarded because Brown has not established personal knowledge of this fact. *See* Fed. R. Civ. P. 56(c)(4).

indicates that Brown's "restrictions and[] limitations were updated" (Doc. 100-7), but does not indicate in what sense the restrictions were "updated," or reconcile that statement with Brown's other medical notes indicating a bottom tier/bottom bunk restriction already in force. Regardless, Brown was not moved from the upper tier.

The next day, February 12, Brown "fell down 25 to 30 steel-edged steps." He was found "lying on the floor in front of the steps . . . moaning and [complaining of] back, right wrist, and right knee pain." (Doc. 88-4). He was held in the infirmary until February 21, and treated for his pain, but x-rays of the affected areas were negative. *See* (Doc. 81-3). On February 21, Brown submitted Grievance #852140, repeating his complaints that he had been improperly placed on the upper tier. In the section of the form prompting him to list "staff you have contacted," Brown named Rook, Pasquale, "C/O Leathers," and an unspecified lieutenant. The grievance did not mention Haldeman or Vance, or the inmate request slips and in-person complaints that Brown attests to have directed to these individuals.

In response to the grievance, Haldeman wrote that "DOCinfo records show[ed]" Brown's bottom bunk/bottom tier status had expired

on December 16, 2019; that nonetheless, "staff were trying to return [Brown] to the lower tier"; and that staff had observed that Brown was able to navigate stairs "with no issues." Haldeman thus found "no negligence or indifference" by any officer, and he denied Brown's grievance. (Doc. 88-2). Brown's appeals were denied on essentially similar grounds, and this lawsuit followed.

## IV. DISCUSSION

### A. Personal Involvement

Defendants[3] argue that Haldeman, Pasquale, and Vance are entitled to summary judgment because the evidence does not show their personal involvement in the underlying violation. Brown's response to this argument is largely premised on his own declaration, and on the allegations in his amended complaint, which he seeks to incorporate within his declaration.[4] *See* (Docs. 29, 102). Defendants argue that the

---

[3] As noted above, Brown has conceded Dr. Preston's entitlement to summary judgment (Doc. 80), and the only remaining issues are those raised by the Commonwealth Defendants (Doc. 84). For brevity, the Court refers generally to the movants as the "defendants," although Dr. Preston did not join the arguments discussed herein.

[4] The rule that Brown cited for this purpose, Federal Rule of Civil Procedure 10(c), governs the form of pleadings, and does not speak to the
*(continued on next page)*

declaration is insufficient to the extent it "simply repeats his bare allegations [in the complaint] that Defendants[] Haldeman, Pasquale, and Vance were personally involved in Sgt. Rook's decision to move him to a cell in the upper-tier." For the following reasons, the declaration does not sustain a genuine dispute of material fact as to Haldeman or Vance's involvement, but Pasquale is not entitled to summary judgment on that basis.

It is well-established that "conclusory, self-serving" testimony, via affidavit or deposition, is insufficient to defeat summary judgment. *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted). However, "the testimony of a litigant will almost always be self serving since few litigants will knowingly volunteer statements that are prejudicial to their case . . . [T]hat has never meant that a litigant's evidence must be categorically rejected by the fact finder." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 321 n. 2 (3d Cir. 2014).

---

admissibility of evidence at the summary judgment stage. Brown's complaint is unverified, *see* (Doc. 29), and will not be considered. Regardless, it would not have changed the outcome, because the allegations are substantially similar to the statements in his declaration.

When a non-movant attempts to defeat summary judgment through their own testimony, courts consider whether that testimony, "juxtaposed with the other evidence, is sufficient for a rational factfinder to credit despite its self-serving nature." *See Hricenak v. Mickey Truck Bodies*, No. 4:21-CV-00694, 2024 WL 1604650, at \*2 (M.D. Pa. Apr. 12, 2024) (citations omitted); *Whitnum v. Meadows at Stroud for Nursing & Rehab., LLC*, No. 3:18-CV-02137, 2020 WL 7773906, at \*4 (M.D. Pa. Dec. 30, 2020).[5]

As relevant here, defendants argue that Brown's declaration does not establish the required personal involvement of the supervisory defendants:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual

---

[5] Defendants cite a case from this district holding that "to defeat a properly-supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint." *See Ritter v. Pepsi Cola Operating Co. of Chesapeake & Indianapolis*, 785 F. Supp. 61, 63 (M.D. Pa. 1992) (citing *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988)). Read in context, this statement appears to mean that a party's initial allegations must be supported by "evidentiary affidavits" at the summary judgment stage, not merely "restated" in a non-evidentiary form. *See Farmer*, 685 F. Supp. at 1339. Third Circuit precedent precludes defendants' proposed interpretation, which would essentially serve to punish a plaintiff for filing a detailed complaint.

> knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

On these issues, Brown's declaration, although self-serving, is not conclusory. It offers detailed averments of interactions with various defendants in which he complained about his prison placement. *See* (Doc. 102, ¶¶ 24-90). However, the Court finds that the declaration, "juxtaposed with the other evidence," does not sustain a genuine issue of material fact as to the personal involvement of Haldeman and Vance. While Brown claims that he personally confronted both defendants prior to his February 13 fall, and submitted inmate request slips to both, he did not name them in his February 21 grievance, nor include them in his list of "staff you have contacted."

The record shows that Haldeman drafted the denial of the February 21 grievance, which contains no mention of Brown's attested complaints to her. Brown's own appeal of Haldeman's decision similarly makes no reference to any prior interactions with Haldeman, and no allegation that Haldeman was responsible for Brown's placement or even aware of the dispute prior to Brown's grievance. *See* (Doc. 88-2 at 11). Given these facts, a reasonable juror would not believe Brown's later claim that he

made two written complaints to Haldeman and confronted her in person just days before filing the grievance.[6]

Turning to Vance, Brown asserts that he sent a written request and renewed his complaint in person when he "encountered" Vance "while coming out of the inmate dining room." However, as with Haldeman, Brown did not name Vance in his grievance. Brown now claims that a lieutenant he named as "John Doe" in the grievance was in fact Vance (Doc. 101, ¶ 7), but that story is essentially contradicted by Brown's own allegations. Specifically, no reasonable jury could believe that Brown submitted a written request directed to Vance by name on February 7, and recognized him in the dining room on February 8, but could only identify him as "John Doe" in the grievance drafted on February 21. The John Doe in the grievance had to be a different person, so that reference does not support Vance's personal involvement.

However, Brown's attestations of his interactions with defendant Pasquale, his unit manager, are sufficiently consistent with the record

---

[6] For Section 1983 purposes, Haldeman's involvement in responding to Brown's post-hoc grievance does not establish her personal involvement in the underlying violation. *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).

that a reasonable jury could credit them. Brown named Pasquale in his February 21 grievance, and specifically recounted having "show[n] Pasquale his] leg braces," which is consistent with Brown's accounts of his other complaints. Further, the record shows that Pasquale had previously advised Brown regarding his December 2019 complaints about medical restrictions. *See* (Doc. 81-4 at 17; Doc. 102, ¶ 77). Given this prior interaction, a reasonable jury could believe Brown's testimony that he returned to Pasquale in February to raise a related complaint.

In sum, because the surrounding evidence is insufficient to credit Brown's attestations of Haldeman and Vance's personal involvement in the alleged violation, those defendants are entitled to summary judgment on that basis, but Pasquale is not.

### B. Deliberate Indifference

Given the foregoing analysis, the only remaining question is whether the remaining defendants, Rook and Pasquale, are entitled to summary judgment notwithstanding the evidence of their personal involvement in Brown's cell placement.

A claim of failure to accommodate medical restrictions in cell placement is analyzed as a "conditions of confinement" claim pursuant to

the Eighth Amendment's prohibition on cruel and unusual punishment. *See Andino-Hernandez v. Mason*, No. 3:21-CV-1570, 2023 WL 2633217, at *5 (M.D. Pa. Mar. 24, 2023) (listing examples).[7] The inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)). A plaintiff can show deliberated indifference if he "demonstrates that the defendant acted or failed to act despite having knowledge that [the defendant's] actions or inaction . . . would subject the inmate to a substantial risk of serious harm." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

For purposes of the motion, defendants do not contest the first and

---

[7] Defendants' citations to cases involving claims of inadequate medical care (Doc. 109 at 6-7) are inapposite. This is not a case where Brown sought to subvert "the division of labor within a prison" by compelling a non-medical officer to intervene in his medical care. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The alleged violation in this case — *i.e.*, the failure to implement cell placement restrictions already imposed by the medical staff — is squarely within the remit of the non-medical officers involved.

third elements, *i.e.,* that Brown was at a substantial risk of harm and that Brown's fall was caused by a failure to address that risk. *See* (Doc. 89 at 10 n.2). However, they assert that the evidence cannot support an inference of deliberate indifference, because of the "disconnect between [Brown's] medical restrictions as recorded in his medical records and the information provided in DOCnet." (Doc. 109 at 5-6). In other words, they argue that some unspecified administrative or technical error resulted in Brown's medical restrictions not appearing in the officers' computers, and therefore, they are not liable for failing to adhere to them. While that is one plausible interpretation of this record, it does not entitle these defendants to summary judgment, for two reasons.

First, defendants' argument assumes that "DOCnet" was the appropriate method for medical staff to convey an inmate's medical restrictions and for the officers to confirm those restrictions. Although defendants appear to contend that their "requirement" was to check DOCnet, and any further inquiry would be "above and beyond" their duties, *see* (Doc. 109 at 7), that procedure is not established by evidence, and cannot be assumed in the movants' favor at the summary judgment

stage.[8] Thus, evidence that defendants relied on DOCnet does not necessarily preclude an inference of deliberate indifference.

The record indicates that Brown required leg braces, had visible difficulty with his gait, and explained to Rook and Pasquale about his injuries and his attendant restrictions. He had previously discussed his medical restrictions with Pasquale in December, in connection with the kitchen job. In the hours before he was moved, he also showed Rook a "bottom tier medical pass," which the Court can infer was facially valid given that the medical department had approved his restriction through June 2020. A jury could find that the officers' responses to this information represented deliberate indifference to a substantial risk to Brown.[9]

---

[8] *See, e.g.*, *Kelly v. Kellner*, No. 4:22-CV-1555, 2025 WL 2248938, at *2 (M.D. Pa. Aug. 6, 2025) ("While [DOC policy] called for medical personnel to inform staff of any necessary medically determined accommodations, the means by which this information was to be transmitted was undefined, and in practice . . . this information was shared in an unstructured and occasionally haphazard manner."); *Maye v. Pennsylvania Dep't of Corr.*, No. 1:21-CV-00530, 2023 WL 7545523, at *8 n.10 (M.D. Pa. Aug. 2, 2023) (describing a dispute as to whether a "same level shower or stairs restriction" would appear on DOCnet).

[9] *See, e.g.*, *Zamichieli v. Pennsylvania Dep't of Corr.*, No. 19-3305, 2022 WL 777201, at *2-4 (3d Cir. Mar. 14, 2022) (despite the defendants'
*(continued on next page)*

Second, even assuming that defendants' reliance on DOCnet was justified, there remains a genuine dispute as to what information DOCnet showed at the relevant time. In her response to Brown's February 21 grievance, Haldeman wrote that based on her post-hoc review, "DOCinfo records show that . . . [Brown's] ground level/lower bunk status had expired 12-16-19. I learned that it has since been reinstated."[10] (Doc. 88-2 at 12). However, Brown's DOCnet data is not in the record, and at the summary judgment stage, defendants would not be entitled to the inference that Haldeman's review of "DOCinfo records" after February 21 accurately reflects what was visible on DOCnet prior to February 12. Moreover, this explanation is still at odds with Brown's

---

claims that a prisoner's placement on the upper tier was the result of unintentional error, his "serious medical need to be housed on the lower tier, and the substantial risks associated with that need, were documented and expressly noted by prison officials in the past. The record also contains evidence and circumstances suggesting that several [officers] were exposed to information concerning that risk."); *Dukes v. Mohl*, No. 1:20-CV-00315, 2022 WL 1667746, at *4 (M.D. Pa. May 25, 2022) (although not directly responsible for a plaintiff's prison placement, officers "were familiar" with his paralysis and took no action).

[10] The Court infers that DOCnet is intended to display a history of the inmate's medical restrictions over time. *See Dukes*, 2022 WL 1667746, at *4 (inmate's "'Medical Housing Recommendations' from DOCNet" indicated that he was "'lower bunk' status since 2009").

medical records, none of which listed an expiration date of December 16, 2019, for any of Brown's past restrictions. *See* (Doc 100-2). Other than their vague assertion of a "disconnect" with the medical records, defendants provide no explanation for the asserted technical errors.[11]

Thus, the record leaves genuine disputes as to whether Brown's placement on the upper tier of his housing unit was in fact caused by technical error, and whether, despite any such error, the officers had sufficient knowledge of the danger to Brown that their decision to place him there constituted deliberate indifference to a substantial risk of harm.

## V. CONCLUSION

Accordingly, summary judgment will be granted to defendants Preston, Nurse Vogt, Sgt. Vogt, Haldeman, and Vance, and granted as to Brown's Section 1985 conspiracy claims, but denied as to the Eighth

---

[11] Defendants contend that the unexplained December 2019 error involving Brown's employment restrictions corroborates their theory of technical error as to his February 2020 cell placement restriction. However, the record indicates that Brown visited the medical staff in December "to get the matter straightened out," and that *both* Brown's labor and medical restrictions were updated on December 13 and/or December 17. *See* (Doc. 100-2 at 4-5, 9). It remains unclear why this would not have resolved any asserted error in its entirety.

Amendment claims against Pasquale and Rook. The Court further finds that this matter is potentially suitable for referral to the Prison Litigation Settlement Program. An appropriate order follows.

Dated: January 5, 2026          *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                United States District Judge